UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND BALDHOSKY,<br><br>Plaintiff,<br><br>v.<br><br>VIDAL SANCHEZ, *et al.*,<br><br>Defendants. | Case No. 1:14-cv-00166-LJO-JDP<br><br>FINDINGS AND RECOMMENDATIONS THAT<br>  (1) DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT BE GRANTED<br>  (2) DOE DEFENDANTS BE DISMISSED<br><br>ECF No. 111 |

Plaintiff is a former state prisoner proceeding with counsel in this civil rights action brought under 42 U.S.C. § 1983. This action now proceeds on the second amended complaint, filed on April 9, 2014, against G. Chavez, A. Cross, K. Daniel, R. Dwivedi, A. Palos, V. Sanchez, A. Yang, Doe Nurse Supervisors 1-2, and Doe Nurses 3-12. ECF No. 81. Plaintiff alleges deliberate indifference to his serious medical needs in violation of the Eighth Amendment. ECF No. 81 ¶ 88. This matter is before the court on defendants' motion for summary judgment. ECF No. 111.

**I.    BACKGROUND**

On July 25, 2018, the court issued a discovery and scheduling order, setting a dispositive motions deadline of January 15, 2019 and a pre-trial conference date of March 1, 2019. ECF No.

1

100 at 1-2. On January 15, 2019, defendants filed a stipulation and proposed order to modify the scheduling order by extending the dispositive motions deadline by two days. ECF No. 109. The court granted the request. ECF No. 110. However, to ensure the dispositive motion would be adjudicated before the pre-trial conference on March 1, 2019, the court ordered an expedited briefing schedule, requiring an opposition, if any, to be filed by January 31, 2019, and a reply, if any, to be filed by February 5, 2019. *Id.*

Defendants moved for summary judgment on January 17, 2019. ECF No. 111. On January 30, 2019, plaintiff filed a stipulation and proposed order to extend the deadline to respond to defendants' motion for summary judgment. ECF No. 114. To ensure that plaintiff would have sufficient time to file a brief in opposition, the court partially granted his request. *See* ECF No. 115. The court ordered plaintiff to file a response, if any, by February 4, 2019, and defendants to file a reply, if any, by February 8, 2019. *Id.* The court warned the parties that "[f]urther extensions of time [would] not be granted absent extraordinary circumstances because the court must adjudicate this motion before the pretrial conference on March 1, 2019." *Id.*

Plaintiff did not file an opposition to defendants' motion for summary judgment by the February 4, 2019 deadline. Instead, plaintiff filed a stipulation stating that the parties had agreed to voluntarily dismiss three of the seven named defendants. ECF No. 116 ("Pursuant to Federal Rules of Civil Procedure Rule 41(a)(1)(A), the parties hereby give notice of the dismissal of Defendants VIDAL SANCHEZ, M.D., RAJENDRA H. DWIVEDI, M.D., and G. CHAVEZ, R.N., only, from the above captioned action, with prejudice. All other parties and causes of action remain.").

In conjunction with the stipulated notice, plaintiff's counsel filed a declaration contending that the stipulation mooted defendants' motion for partial summary judgment. ECF No. 116-1 (captioning declaration as "Declaration of Ken Karan in Support of Finding that the Pending Motion for Summary Judgment is Moot."). In the declaration, plaintiff's counsel states, "The notice of motion, the points and authorities, and the statement of facts all make clear that the motion is brought by Defendants Sanchez, Dwivedi, and Chavez, and no others." *Id.* at 1.

Defense counsel disagrees with this assertion. She contends that the motion for summary judgment pertained to all defendants and is not mooted by the stipulated dismissal. ECF No. 117. Defense counsel warned plaintiff's counsel of her position in an email prior to agreeing to the stipulated dismissal:

> I want to clarify one point so there is no misunderstanding. The MSJ was made on behalf of Dwivedi, Sanchez, and Chavez as to the claims asserted against them, AND on behalf of all the Defendants on Plaintiff's damages claims concerning his UTIs and obliterated urethra due to the lack of evidence on causation. (See Notice at 1:27-2:3, ECF No. 111, and P&A at 11:18-12:18, ECF No. 111-1.) Let me know if you want to discuss this further or if this affects your offer/position to dismiss Chavez, Dwivedi, and Sanchez.

ECF No. 116-1 at 2.

The parties dispute whether their stipulated dismissal of three of the seven named defendants moots defendants' motion for partial summary judgment. In other words, the parties disagree whether defendants have moved for summary judgment on plaintiff's claims against the other four named defendants—Cross, A. Palos, Daniel, and Yang. Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Accordingly, we review the motion for summary judgment to determine whether defendants identified each claim or part of each claim upon which summary judgment was sought.

First, we consider the notice accompanying the motion. ECF No. 111. The notice is captioned, "Defendants' Notice of Motion and Motion for Partial Summary Judgement."[1] *Id.* (capitalization altered). Its text, reproduced in its entirety, is as follows:

> PLEASE TAKE NOTICE that Defendants move, under Federal Rule of Civil Procedure 56, for summary judgment on the grounds

---

[1] Although the caption states that the motion is one for *partial* summary judgment, this does not shed light on the question before us. Even if the motion pertained to all seven defendants, designating it as a motion for partial summary judgment would be appropriate because Doe defendants remain in the case. Perhaps in recognition of this fact, plaintiff offers no argument on this point.

3

> that no genuine issue of material fact exists concerning Plaintiff's Eighth Amendment claims against Defendants Chavez, Dwivedi, and Sanchez because (1) Dwivedi and Sanchez properly and timely addressed Plaintiff's medical needs to the extent they were known to Defendants and Plaintiff's disagreement with their course of action does not give rise [to] a constitutional violation, (2) Chavez did not catheterize or attempt to insert a catheter into Plaintiff, and (3) Defendants are qualifiedly immune. Defendants also move for summarily [sic] judgment on Plaintiff's damages claims for urethra failure/obliteration and urinary tract infections and punitive damages on the grounds that no medical evidence shows a causation connection between Plaintiff's infections and strictures and Defendants' conduct, and no evidence shows that any Defendant acted with evil intent to maintain a claim for punitive damages. The motion is based on this notice, the memorandum of points and authorities, the declaration of Diana Esquivel, the pleadings, records and files in this action, and such other matters as may properly come before the Court.

*Id.* Plaintiff's counsel contends that "[t]he notice of motion . . . make[s] clear that the motion is brought by Defendants Sanchez, Dwivedi, and Chavez, and no others." *Id.* ¶ 3; *see also id.* ¶ 7 ("The notice of motion says nothing about unnamed Defendants being made part of the motion on some particular point.").

We find plaintiff's argument unpersuasive. Although the notice specifically names Chavez, Dwivedi, Sanchez, and no others, the second sentence states, without limitation, that "Defendants also move for summarily [sic] judgment on Plaintiff's damages claims for urethra failure/obliteration and urinary tract infections and punitive damages . . . ." *Id.* If the court were to read the second sentence as limited by the first, it might support the proposition that the notice applied only to three named defendants. However, it would be equally reasonable to read the second sentence independently—which, if read literally, applies to all defendants. Therefore, the notice is ambiguous.

Turning to defendants' "Memorandum of Points and Authorities in Support of Defendants' Motion for Partial Summary Judgement," we find it makes arguments for summary judgment on behalf of all named defendants. At the end of the brief's introduction, defendants state, unambiguously, that they move for summary judgment on plaintiff's claims against all named defendants. ECF No. 111-1 at 1-2 ("For these reasons the Court should grant summary

judgment in favor of Dwivedi, Sanchez, and Chavez *and in favor of all Defendants* on Plaintiff's punitive damages claim and his damages claim for his strictures, UTIs, and urethral failure." (emphasis added)). Furthermore, in all but one legal argument section, defense counsel refers to the three defendants by name, but in the last section, defense counsel refers to the defendants generally, suggesting that the last argument applies to all defendants.

Ultimately, the court concludes that the parties' stipulated dismissal of three of the seven named defendants did not moot defendants' motion for partial summary judgment; defendants moved for summary judgment on plaintiff's claims against the other four named defendants—Cross, A. Palos, Daniel, and Yang—because defendants "identif[ied] each claim . . . on which summary judgment is sought" in accordance with Federal Rule of Civil Procedure 56(a). Defendants' motion is therefore properly before the court.

The court ordered plaintiff to file a response to defendants' motion for summary judgment, if any, by February 4, 2019. ECF No. 115. Plaintiff has not filed a response, and the time to do so has passed. The court warned the parties that "[f]urther extensions of time [would] not be granted absent extraordinary circumstances because the court must adjudicate this motion before the pretrial conference on March 1, 2019." *Id.* Accordingly, the court will take the matter under submission without an opposition from plaintiff.

I.  **LEGAL STANDARDS**

   a. **Summary Judgment**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Rule 56 allows a court to grant summary adjudication, also known as partial summary judgment, when there is no genuine issue of material fact as to a claim or portion of that claim.

*See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

Each party's position must be supported by (1) citing to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider other materials in the record not cited to by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (citing *Celotex Corp.,* 477 U.S. at 323). The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W.*

*Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated there to be no genuine issue of material fact and that judgment is appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

### b. Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). "This second prong— defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* (citing *McGuckin*, 974 F.2d at 1060). Indifference may be manifest "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* When a prisoner alleges a delay in receiving medical treatment, the delay must have led to further harm for the prisoner to make a claim of deliberate indifference to serious medical needs. *See McGuckin*, 974 F.2d at 1060 (citing *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d

404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (quoting *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Id.* at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." *Id.* (citing *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990)). Additionally, a difference of opinion between an inmate and prison medical personnel—or between medical professionals—on appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *See Toguchi*, 391 F.3d at 1058; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

### c. Causation Requirement of § 1983

In an action brought under § 1983, including a deliberate indifference claim, a defendant may be liable to a plaintiff if the defendant "subject[ed], or cause[ed] to be subjected," the plaintiff to the deprivation of his constitutional rights. 42 U.S.C. § 1983; *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) ("In a § 1983 action, the plaintiff must . . . demonstrate that the defendant's conduct was the actionable cause of the claimed injury.") (citing *Arnold v. IBM Corp.*, 637 F.2d 1350, 1355 (9th Cir.1981)). To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation. *Harper*, 533 F.3d at 1026 (citing *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996); *Arnold*, 637 F.2d at 1355). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

## II. SUMMARY JUDGMENT RECORD

The factual record in this case is over three hundred pages and includes medical records,

plaintiff's bed assignments history, depositions, inmate grievances, expert disclosures, inmate segregation records, and responses to interrogatories. ECF No. 112. Though plaintiff has neither opposed this motion for summary judgment nor presented evidence, the court will consider his complaint as part of the summary judgment record. ECF No. 81. We draw the following undisputed facts relevant to plaintiff's claims against defendants Yang, Cross, Palos, and Daniel from the evidence before the court.

### A. General Background Facts

Plaintiff was an inmate in the custody of California Department of Corrections and Rehabilitation ("CDCR") between at least July 2008 and December 2009. Esquivel Decl. Ex A ("Bed Assignments"); SAC ¶ 15. CDCR housed plaintiff at California State Prison-Corcoran ("COR") in the Acute Care Hospital from August 6, 2008 to May 29, 2009. Bed Assignments; SAC ¶ 24.

Plaintiff is a person with paraplegia and has used catheters to drain his bladder since 2006. Baldhosky Dep. Vol. 1 at 14: 9-10; 17:19-24, 18:20-23, 19:13-20:8. Plaintiff has used both intermittent sterile kit catheters and Foley catheters following his first urinary tract infection ("UTI"). *Id.* Intermittent catheterization ("IC") is the process by which a patient takes a catheter and inserts it into the penis and bladder to empty the bladder. *Id.* 18:7-10, 19:16-20.; Esquivel Decl. Ex. C ("Breyer Rpt.") at 3, 5. "The catheter does not need to be sterile but should be clean." Breyer Rpt at 5. Catheters used in the IC technique can either single-use or cleaned and reused. *Id.* A Foley catheter, or indwelling catheterization, is a tube that allows the passage of urine from the bladder through the urethra into a bag, and has a balloon on the bladder end to prevent dislodgement. Breyer Rpt. at 3, 5; SAC ¶ 26. A Foley catheter is intended to be left in place for three to four weeks, while the IC is left in place temporarily during use. *Id.* at 3, 5; SAC ¶ 26.

A wide variety of catheter types and sizes are suitable for IC. Breyer Rpt. at 5. Typically, the sizes range from 12-18 French. *Id.* A "French," the unit of measurement for the diameters of catheters, is equal to 0.33 mm. *Id.* Thus, a 16 French catheter has a diameter of 5.333 mm, and

9

an 18 French catheter diameter is 6 mm or 0.6 cm. *Id.* "The male urethra should be able to accommodate [the size-18 French catheter]." *Id.*

Prior to entering the custody of CDCR at COR, plaintiff used a "#16 French sterile field (as opposed to merely 'clean') catheter kit 4 to 6 times per day with the intermittent method." SAC ¶ 27. Immediately prior to his incarceration, he suffered a UTI, which led to a two-to-three-week hospitalization at San Joaquin General Hospital and the temporary use of a Foley catheter. Baldhosky Dep. Vol. 1 at 17:1-14. When plaintiff arrived at COR, he had a Foley catheter. Baldhosky Dep. Vol. 1 at 60:24-61:5; Esquivel Decl. Ex. D ("Medical Record HRC238-239"); *see also* SAC ¶ 35.

Plaintiff arrived at COR on or about July 20, 2008. SAC ¶ 30. In August 2008, his new healthcare providers removed his Foley catheter and recommened the IC regimen. SAC ¶ 35; Breyer Rpt. 3. Thereafter, plaintiff alleges that COR healthcare staff repeatedly inserted catheters into his urethra improperly, causing him trauma. SAC ¶¶ 35, 52; Breyer Rpt. 3. In November 2008, a healthcare provider performed a "direct vision internal urethrotomy"[2] on plaintiff and discovered a 2 cm bulbar stricture.[3] Due to the stricture, plaintiff alleges that he may never be able to use his urethra again. *See* SAC 82.

**B. Plaintiff's Allegations in the Operative Complaint Concerning Defendants Yang, Cross, Palos, and Daniel**

Plaintiff's allegations in the SAC concerning defendants Yang, Cross, Palos, and Daniel are summarized as follows. At all relevant times, defendants Yang, Cross, Palos, and Daniel worked for CDCR as registered nurses at COR. SAC ¶ 19. Each was responsible for providing medical care to plaintiff, including urinary catheterizations. *Id.* Plaintiff alleges that from August 6, 2008 to early September 2008, defendants Yang, Cross, Palos, and Daniel forcefully inserted catheters into his urethra despite being "met with resistance from blockage in Plaintiff's urethra":

Attempts were repeated in the presence of resistance, blood,

---

[2] "[A] direct vision internal urethrotomy is an endoscopic procedure where a cystoscope with a small knife is used to incise scar and relieve blockage." Breyer Rpt. 3.

[3] "[A] a bulbar stricture is a narrowing caused by scarring in the urethra between the penis and prostate." Breyer Rpt. 3.

> discharged tissue, and Plaintiff's objections. A typical day could
> result in approximately 30 catheter insertion attempts, with as many
> as approximately 60 attempts on one day by Defendant Yang plus
> subsequent attempts by health care providers attempting to resolve
> the over-full bladder.

*Id.* ¶ 36. The "protocol" when catheter insertion is met with resistance is to cease the insertion attempt, but defendants nonetheless forced insertions despite this protocol.[4] *Id.* ¶ 37. "Plaintiff requested that Defendants use sterile closed catheter kits size #16 for intermittent cathing or switch back to IDCM because the evidence of daily trauma, blood, urethra swelling, and tissue discharge led to his conclusion that he could be permanently damaged from repeated unnecessary and inappropriate catheter insertions."[5] *Id.* ¶ 38. Defendants ignored this request. *Id.* Defendants also informed plaintiff that COR did not possess "any sterile closed catheter kits"—although they later provided such kits. *Id.* ¶ 39.

Plaintiff makes the following allegations against defendant Daniel:

> On or about August 19, 2008, after 7 p.m., Defendant Nurse
> Daniel attempted to use the wrong size component-part catheters
> without providing a sterile staging area and without sterile gloves.
> Plaintiff refused to use them. Contradicting Nurse Daniel's claims
> that she could not find #16 catheters, she returned shortly after
> Plaintiff's refusal with one sterile closed #16 catheter field kit
> which Plaintiff used. In the early hours of August 20, 2008,
> Plaintiff required bladder relief and Daniel again refused to provide
> a sterile closed catheter field kit. Plaintiff refused to subject
> himself to the risk of infection and trauma. Defendant's actions
> caused Plaintiff to suffer the pain of a full bladder without an option
> for relief.

*Id.* ¶ 48.

Plaintiff makes the following allegations against defendant Yang:

> On August 21, 2008, Defendant Doe Nurse 8 made several
> unsuccessful attempts to insert catheters into Plaintiff's urethra
> causing trauma and bleeding. Later in the day, Defendant Yang

---

[4] In his deposition, plaintiff conceded that defendants stopped their attempts to insert a catheter upon his request. Baldhosky Dep. Vol. 1 at 83:7-85:12.

[5] "[A] closed catheter kit is used for intermittent catheterization and comes with the catheter connected to a bag in one unit." Breyer Rpt. 3.

11

>tried to insert another catheter but failed. Trauma to Plaintiff's
>urethra continued to accumulate due to the many insertions
>attempted throughout the day.

*Id.* ¶ 52.

Plaintiff makes the following allegations against defendant Palos:

>On September 24, 2008, Defendant Palos, using an
>inappropriate catheter via intermittent catheter method, experienced
>repeated failures to insert until she successfully forced insertion
>causing trauma, including bleeding and tissue discharge.
>. . .
>Nurse Palos' next attempt [that day] to catheterize Plaintiff failed
>completely and she returned Plaintiff to the IDCM.

*Id.* ¶¶ 60-61.

### C. Causation

The following facts are drawn from the parties' medical experts and are summarized as follows. Persons who have paraplegia and are catheter-dependent commonly develop UTIs, and such UTIs do not necessarily indicate a breach in the standard of care. Breyer Rpt. 6-7. Of the two primary methods of catheterization, IC is typically favored because it has been shown to lead to fewer UTIs and is more comfortable for the patient. Breyer Dep. 19:5-22:6. Even if the patient has just recovered from a UTI, patients typically wish to return to an IC regime. Breyer Dep. 19:5-22:6. Plaintiff's expert does not offer any opinion on whether using a Foley catheter rather than an IC made Baldhosky more susceptible to a UTI. Esquivel Decl. Ex. S ("Dall'Era Dep.") at 59:11-14.

According to defendants' expert, "Medical science cannot say, with a reasonable degree of certainty, that using an 18 French catheter rather than a 16 French caused Mr. Baldhosky's urethral stricture disease or urinary tract infections." Breyer Rpt. at 5-6. The difference between an 18 and 16 French catheter is less than a tenth of a centimeter, which is "negligible." Breyer Dep. 35:7-21.

"Developing a urethral stricture in a paraplegic with neurogenic bladder who has undergone repeated catheterizations/instrumentation is not uncommon and does not

indicate a breach in the standard of care." Breyer Rpt. at 7. IC and Foley catheters equally have the potential of causing strictures in the urethra. Breyer Dep. 30:10-13. Doctors cannot determine which traumas cause strictures to form. Breyer Dep. 39:9-43:19; 55:18-25, 63:6-64:3. Thus, it is impossible to tell whether defendant nurses' alleged forced insertions or plaintiff's self-cathing caused his scarring. *Id.*

Plaintiff's expert does not dispute defendants' expert's opinions. Plaintiff's expert opined that a that a two-centimeter-long stricture could form in a two-month period, but he states that there is no urological literature that speaks to the rate of stricture formation. Dall'Era Dep. 38:8-19. He also states that the scarring of plaintiff's urethra is a result of repeated catheter use, but he concedes that there is no way to determine whether plaintiff's stricture was caused by one or multiple traumas. Dall'Era Dep. 39:4-14, 49:23-52:6. And plaintiff's expert cannot rule out that catheterizations plaintiff performed before his incarceration started the formation of strictures in his urinary tract. Dall'Era Dep. 70:13-20.

### III. DISCUSSION

We first consider whether defendants, the moving party, have met their initial burden of "proving the absence of a genuine issue of material fact" and a prima facie entitlement to summary judgment. *Celotex Corp.*, 477 U.S at 323. Defendants present evidence that defendants affirmatively treated plaintiff for his neurogenic bladder. Plaintiff's complaint shows that, at all relevant times, defendants Yang, Cross, Palos, and Daniel, who worked for CDCR as registered nurses at COR, were each was responsible for providing medical care to plaintiff, including urinary catheterizations. SAC ¶ 19. Plaintiff alleges that each defendant forcefully inserted catheters into his urethra despite being "met with resistance from blockage in Plaintiff's urethra." SAC ¶ 36. Plaintiff also alleges that he requested to "use sterile closed catheter kits size #16 for intermittent cathing or switch back to IDCM," but defendants ignored this request. SAC ¶ 36. Though the court is sympathetic to plaintiff's plight, plaintiff's allegations do not rise to the level of deliberate indifference. As stated above, to establish that "the defendant's response to the need was deliberately indifferent," *Jett*, 439 F.3d at 1096, plaintiff must show "a purposeful act or failure to respond to a prisoner's pain or possible medical need." *Id.*; *see McGuckin*, 974 F.2d at

1060 ("A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established."). Plaintiff's allegations show that, rather than purposefully ignoring or failing to respond to plaintiff's medical need, defendants affirmatively responded to it. Even if, as plaintiff alleges, defendants inserted catheters negligently or forcefully, the evidence shows that they did not purposefully ignore his need to use catheters or his discomfort during the IC insertions. To the contrary, defendants assisted him with IC and, when plaintiff asked them to cease an insertion attempt, they complied. Baldhosky Dep. Vol. 1 at 83:7-85:12.

Defendants also present evidence that plaintiff cannot establish causation. In his report and deposition, defendants' expert stated that, "Medical science cannot say, with a reasonable degree of certainty, that using an 18 French catheter rather than a 16 French caused Mr. Baldhosky's urethral stricture disease or urinary tract infections." Breyer Rpt. at 5-6. Moreover, doctors cannot determine which traumas to a urethra cause strictures to form. Breyer Dep. 39:9-43:19; 55:18-25, 63:6-64:3. Plaintiff's expert does not dispute these contentions. He states that the scarring of plaintiff's urethra is a result of repeated catheter use, but he concedes that there is no way to determine whether plaintiff's stricture was caused by one or multiple traumas. Dall'Era Dep. 39:4-14, 49:23-52:6. And plaintiff's expert cannot rule out that catheterizations plaintiff performed before his incarceration started the formation of strictures in his urinary tract. Dall'Era Dep. 70:13-20. Thus, construing the evidence before the court in the light most favorable to plaintiff, it is impossible to tell whether plaintiff's strictures were caused by his own actions or the actions of defendants.

Considering defendants' evidence, the court finds that defendants have "negat[ed] an essential element of the nonmoving party's claim." *Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1102. Specifically, defendants' evidence negates the second prong of the deliberate indifference inquiry, which is "satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference," *Jett*, 439 F.3d at 1096, because defendant affirmatively responded to plaintiff's medical need. Defendants' evidence also negates the causation requirement of § 1983. *See Harper*, 533 F.3d 1010, 1026

(9th Cir. 2008) ("In a § 1983 action, the plaintiff must . . . demonstrate that the defendant's conduct was the actionable cause of the claimed injury."). Therefore, defendants have met their initial burden.

Because defendants satisfied their initial burden, the burden shifts to plaintiff to present specific facts that show there to be a genuine issue of a material fact. *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. As stated above, plaintiff did not oppose defendants' motion for summary judgment. The court nonetheless considers plaintiff's complaint to be part of the summary judgment record and will determine whether it shows there to be a genuine issue of a material fact.

In his complaint, plaintiff challenges aspects of the care he received from defendants. Specifically, plaintiff alleges that defendants should have provided him "sterile" catheters that were size 16 French. ECF No. 81 ¶¶ 27-28, 38. Defendants' expert disputes these contentions, opining that that catheters need only be clean rather than sterile and that the difference between a 16 French and 18 French catheter is negligible. Breyer Rpt at 5; Breyer Dep. 35:7-21. While these two disputes are arguably genuine, *see Anderson*, 477 U.S. at 248 (concluding that an issue is genuine if a reasonable fact finder could find for the non-moving party), they are not material because defendants have negated two essential elements of plaintiff's claim, *see id.* (concluding that a fact is material if it "might affect the outcome of the suit under the governing law"). Therefore, plaintiff's complaint fails to show a genuine issue of material fact.

In sum, the evidence, construed in favor of plaintiff, is insufficient to raise a triable issue whether defendants' alleged conduct caused plaintiff's injury or constituted "a purposeful act or failure to respond to a prisoner's pain or possible medical need" as is required to show deliberate indifference. *Jett*, 439 F.3d at 1096. We conclude that there is no genuine issue of material fact and that defendants are entitled to summary judgment.[6]

## IV. DOE DEFENDANTS

The deadline to amend the pleadings in this case was September 15, 2017. ECF No. 69. This

---

[6] The court has found that summary judgment is appropriate on the merits. Therefore, we need not address the issue of qualified immunity.

deadline has passed but plaintiff has not substituted true persons for the Doe defendants. Accordingly, we will recommend that the Doe defendants be dismissed.

## V.     FINDINGS AND RECOMMENDATION

Accordingly, we recommend that:

1. defendants' motion for summary judgment, ECF No. 111, be granted;
2. Doe Nurse Supervisors 1-2 and Doe Nurses 3-12 be dismissed from this case; and
3. the clerk of the court be directed to close this case.

We submit these findings and recommendations to the district judge presiding over this case under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days of the service of the findings and recommendations, the parties may file written objections to the findings and recommendations with the court and serve a copy on all parties. That document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C). The parties' failure to file objections within the specified time may result in the waiver of rights on appeal. *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   February 13, 2019                                               
                                                      UNITED STATES MAGISTRATE JUDGE